UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA BUELL,<br><br>        Plaintiff,<br><br>    v.<br><br>CREDIT.COM, INC.,<br><br>        Defendant. | Case No. 4:21-cv-01055-KAW<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Re: Dkt. No. 15 |

On April 19, 2021, Defendant Credit.com, Inc. filed a motion to strike Plaintiff Angela Buell's class allegations on the grounds that the recent United States Supreme Court decision in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"), renders the robocall restriction unconstitutional for the five-year period preceding the decision, thereby significantly narrowing the putative class period.

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES Defendant's motion to strike.

**I.    BACKGROUND**

On February 11, 2021, Plaintiff Angela Buell filed a class action complaint against Defendant Credit.com, Inc., alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by making unsolicited, pre-recorded telemarketing calls. (Compl., Dkt. No. 1 at 1.) Defendant provides credit counseling services. (Compl. ¶ 16.)

Plaintiff has been on the National Do Not Call Registry since April 2013, and alleges that Defendant called her personal cell phone three times in February 2021 and delivered three identical pre-recorded voicemails. (Compl. ¶¶ 26-36.) Plaintiff asserts that she did not consent to

receive pre-recorded or telemarketing calls and was not seeking services from Defendant or Defendant's partners. (Compl. ¶¶ 37-38.) Plaintiff seeks class certification pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) of two Classes: the Pre-recorded No Consent Class and the Do Not Call Registry Class. (Compl. ¶ 41.) Only the putative Pre-recorded No Consent Class, defined below, is the subject of Defendant's motion:

> **Pre-recorded No Consent Class**: All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of Defendant) called (2) using a pre-recorded voice message, and (3) for whom the Defendant claim (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiff, or (b) they obtained the person's number in the same manner as Defendant obtained Plaintiff's number.

*Id.*

On April 19, 2021, Defendant filed a motion to strike the class allegations that fall within the period that the TCPA included a government-debt exception. (Def.'s Mot., Dkt. No. 15 at 1.) On May 3, 2021, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 17.) On May 10, 2021, Defendant filed a reply. (Def.'s Reply, Dkt. No. 20.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) provides that, on its own or on motion made by a party, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

Using Rule 12(f) as a vehicle for resolving the propriety of class claims, pursuant to Rule 23, is generally disfavored, and a motion to strike should only be granted where the allegations in question are "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Whittlestone, Inc.*, 618 F.3d at 973-74 (9th Cir. 2010).

## III.   DISCUSSION

Defendant moves to strike the class allegation of the "Pre-recorded No Consent Class" on

the grounds that the class definition is overbroad in light of the United States Supreme Court's ruling in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"). (Def.'s Mot. at 4.)  In *AAPC*, the Supreme Court held that the government-debt exception to the robocall restriction, enacted in November 2015, violated the First Amendment as a content-based restriction on speech. 140 S. Ct. at 2343.  As a result of the finding in *AAPC*, Defendant is asking this Court to narrow the Pre-recorded No Consent class period to the period beginning on July 6, 2020, the date of decision, and continuing through trial. (Def.'s Mot. at 4.)

**A.    1991 Telephone Consumer Protection Act ("TCPA"**

The 1991 Telephone Consumer Protection Act ("TCPA") amended the 1934 Communications Act by adding a robocall restriction. *AAPC*, 140 S. Ct. at 2344, 2352.  The TCPA's robocall restriction, 47 U.S.C. § 227(b)(1)(A)(iii), imposed various restrictions on the use of automated telephone equipment to protect consumers from the growing number of telemarketers using the equipment to automatically dial telephone numbers and deliver prerecorded or artificial voice messages. *AAPC*, 140 S. Ct. at 2344.  In 2015, the Bipartisan Budget Act amended the robocall restriction to include an exception permitting robocalls by government-debt collectors. 140 S. Ct. at 2344-45. Thus, the TCPA's robocall restriction prohibited:

> [A]ny call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call, **unless such call is made solely to collect a debt owed to or guaranteed by the United States.**

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

**B.    *AAPC* and the constitutionality of the Government-Debt Exception**

In 2020, five years after the government-debt exception was enacted, the United States Supreme Court, in *AAPC*, addressed whether the government-debt exception constituted a content-based speech regulation in violation of the First Amendment. 140 S. Ct. at 2345.

///

In *AAPC,* the American Association of Political Consultants and three other organizations involved in the political process believed their outreach to citizens would be more efficient and effective if they could make robocalls to cellular telephones. 140 S. Ct. at 2345. Since the organizations were prohibited from placing robocalls because they were not government-debt collectors, they filed an action for declaratory judgment against the U.S. Attorney General and the Federal Communications Commission alleging that § 227(b)(1)(A)(iii) violated the First Amendment. *Id.*

The U.S. District Court for the Eastern District of North Carolina found that the government-debt exception was a content-based restriction on speech, thereby triggering strict scrutiny. 140 S. Ct. at 2345. The district court held that the statute survived strict scrutiny because of the Government's interest in collecting debt. *Id.* The U.S. Court of Appeals for the Fourth Circuit vacated the judgment, disagreeing with the district court that the law could survive strict scrutiny. 140 S. Ct. at 2345. The Fourth Circuit found the government-debt exception unconstitutional, and severed it from the TCPA's general robocall restriction. *Id.* The Supreme Court then granted certiorari. *Id.* at 2346.

The issue before the Supreme Court was whether the robocall restriction with the government-debt exception was unconstitutional, and if so, whether to invalidate the entire 1991 robocall restriction, or invalidate and sever the exception from the rest of the statute. 140 S. Ct. at 2346, 2348. First, and without a majority opinion, six members of the Supreme Court found that the exception was a content-based restriction in violation of the First Amendment because it favored debt-collection speech over political speech. *Id.* at 2343, 2346 (Kavanaugh, J.); *Id.* at 2357 (Sotomayor, J., concurring in judgment); *Id.* at 2363 (Gorsuch, J., concurring in judgment in part and dissenting in part).

### i.   Severability

Having found the government-debt exception unconstitutional, the Supreme Court turned to whether the offending provision could be severed from the statute. Generally, the inclusion of a severability clause "mak[es] clear that the unconstitutionality of one provision does not affect the rest of the law." *AAPC,* 140 S. Ct. at 2349. The Supreme Court determined that the express

4

severability clause included in the 1934 Communications Act extended to § 227 required that the government-debt exception be severed from the general robocall restriction so long as "the remainder of the statute is 'capable of functioning independently' and thus would be 'fully operative' as a law." *Id.* at 2352 (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2209 (2020)). Ultimately, a plurality (seven Members of the Court) determined that severability was appropriate because the remainder of the general robocall restriction was capable of being fully operative as a law, because it had functioned independently in the years prior to the addition of the government-debt exception. *Id.* at 2343-44, 2353.

Since the government-debt exception was a relatively narrow exception to the broad robocall restriction, and severing it would not raise any other constitutional problems, the same plurality determined that severance cured the unequal treatment under the First Amendment, thereby preserving the robocall restriction. *Id.* at 2343-44, 2355. In closing the severability discussion, Justice Kavanaugh, joined by Chief Justice Roberts and Justice Alito, explicitly absolved government-debt collectors of liability for robocalls made during that time, but also stated that liability would still attach for anyone who violated the general robocall restriction between 2015 and 2020. *Id.* at 2355 n.12 ("[O]ur decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.") Since a majority did not sign on to Judge Kavanaugh's entire opinion, there is disagreement among district courts as to whether footnote 12 is binding precedent or merely persuasive.

### ii. Whether severance is retroactive or prospective

Defendant argues that the inclusion of the unconstitutional government-debt exception renders the entire robocall restriction unconstitutional from its amendment in 2015 until the Supreme Court severed the exception in 2020. (Def.'s Mot. at 6; Def.'s Reply at 2.) As a result, Defendant contends that the general robocall exception can only be enforced prospectively. *Ids.*

Defendant argues that footnote 12's pronouncement that it could still be held liable for robocalls made between 2015 and 2020 is dictum, because "the statement was joined by only three justices, was unnecessary to support the court's holding, was not based on the facts of the case at hand, and addressed an issue not presented to the Court." (Def.'s Reply at 7.) Specifically,

1  Defendant asserts that only the three justices in the plurality opinion supported the severability
2  analysis, and thus the footnote, while four Justices concurred in judgment only. (Def.'s Reply at
3  7.)  In support of its position, Defendant relies on three district courts that treated the footnote as
4  non-binding dicta. *Creasy v. Charter Commc'ns., Inc.*, 489 F. Supp. 3d 499, 503 (E.D. La. 2020)
5  (characterizing the footnote as "passing Supreme Court dicta of no precedential force");
6  *Lindenbaum v. Realgy, LLC,* 497 F. Supp. 3d 290, 295 (2020) (finding the footnote was endorsed
7  by only the three Justices in the plurality opinion); *Hussain v. Sullivan Buick-Cadillac-GMC*
8  *Truck, Inc.*, No. 5:20-cv-38-Oc-30PRL, 2020 WL 7346536, at *3 (M.D. Fla. Dec. 11, 2020)
9  (agreeing with the analysis in *Creasy* and *Lindenbaum*).
10  In opposition, Plaintiff argues that, despite footnote 12 being contained in the three-Justice
11  plurality opinion, seven Justices concurred in the severability discussion rendering the footnote
12  binding. (Pl.'s Opp'n at 3.)  The undersigned agrees.  Indeed, Justices Sotomayor and Breyer
13  (joined by Justices Ginsburg and Kagan), concurred with Justice Kavanaugh's severability
14  conclusion, which left the longstanding robocall restriction intact. 140 S. Ct. at 2357 (Sotomayor,
15  J., concurring in judgment); *Id.* at 2363 (Breyer, J., concurring in judgment with respect to
16  severability and dissenting in part) ("I respectfully concur in the judgment with respect to
17  severability and dissent in part [finding the exception does not violate the First Amendment].").
18  The undersigned is persuaded by the district court's analysis in *McCurley v. Royal Sea Cruises,*
19  *Inc.*, No. 17-cv-00986-BAS-AGS, 2021 WL 288164, at *3 (S.D. Cal. Jan. 28, 2021), where the
20  court held that footnote 12 was not dicta because it was joined by six other Justices. (*See* Pl.'s
21  Opp'n at 6.)  The undersigned notes that only Justices Gorsuch and Thomas dissented on the issue
22  of severability. 140 S. Ct. at 2365-66 (Gorsuch, J., concurring in judgment in part and dissenting
23  in part).
24  Furthermore, as the *McCurley* court noted, Justices Breyer, Ginsburg, and Kagan "would
25  not have held the 2015 amendment to be unconstitutional at all, and they certainly agreed
26  Defendant could be held liable." *McCurley*, 2021 WL 288164, at *2.  The latter point holds true in
27  the instant case.  Here, the alleged robocalls were not protected by the government-debt exception,
28  and, at the very least, six Justices—Chief Justice Roberts, and Justices Kavanaugh, Alito, Breyer,

United States District Court
Northern District of California

Ginsburg, and Kagan—clearly agreed that Defendant could still be held liable for all robocalls made after the enactment of the unconstitutional exception. *See* 140 S. Ct. 2355 n.12 (Kavanaugh, J.); *Id.* at 2357-63 (Breyer, J., concurring in judgment with respect to severability and dissenting in part).

Finally, the Court is not persuaded by Defendant's reliance on *Creasy*, 489 F. Supp. 3d at 507, where the district court reasoned that the exception fundamentally altered the entire statute and required that it be enforced prospectively. (*See* Def.'s Mot. at 6.) In *Creasy,* the court held that the entire robocall restriction was void because "it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*." 489 F. Supp. 3d at 507 (emphasis in original). The undersigned, however, is unpersuaded by this rationale because the majority of sitting justices found it proper "to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." *AAPC,* 140 S. Ct. at 2355. Defendant's reliance on *Hussain*, 2020 WL 7346536, at *3, is similarly misplaced. (Def.'s Mot. at 7.) In that case, the court found that "[t]he 2015 amendment, adding the government-debt exception, changed an otherwise valid statute to an unconstitutional content-based restriction." *Hussain*, 2020 WL 7346536, at *3 (citing *AAPC*, 140 S. Ct at 2347-48.) The *Hussain* court's determination would be persuasive if the Supreme Court had struck down the entire 1991 robocall restriction. Instead, the Supreme Court only invalidated the 2015 government-debt exception. *AAPC,* 140 S. Ct. at 2348, 2355.

Accordingly, the Court finds that the TCPA's general robocall restriction remained intact from 1991 onward, which includes the entire putative class period, and requires that the pending motion to strike be denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to strike is DENIED. Defendant shall file an answer within 14 days of this order.

IT IS SO ORDERED.

Dated: July 30, 2021

KANDIS A. WESTMORE
United States Magistrate Judge

7